UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RICKY L. MANSFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:15-cv-00262-PPS-SLC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Ricky Mansfield appeals the denial of his application for disability insurance benefits and Supplemental Security Income. The ALJ assessed Mansfield as having five "severe impairments," but found that he was still physically capable of "medium work," including his previous relevant work. In finding Mansfield capable of medium physical exertion, the ALJ largely dismissed the findings of two government medical consultants who found Mansfield capable of doing only light physical exertion. The ALJ also did not find Mansfield entirely credible. As a result of the ALJ's determination of Mansfield's capabilities, the ALJ found that Mansfield is not disabled, and thus that he is not eligible for the benefits he seeks. Because I agree with Mansfield that the ALJ's opinion does not cite to substantial evidence in support of the residual functional capacity on which it relies, I must remand this case for further consideration by the ALJ.

## Background

Mansfield's claim for benefits is based on several medical issues, both physical and mental. There is not an abundance of medical evidence in the record, but there is at

least basic documentation establishing that Mansfield had hernia surgery in 2006 [DE 12 at 322, 397-99] and right flank and groin pain continuing to some degree since then [*see, e.g.*, DE 12 at 337, 347, 349], with mild to moderate disc degenerative changes in his spine [DE 12 at 309]; anxiety and alcoholism issues [*see, e.g.*, DE 12 at 84-85, 308, 337, 365-68]; high cholesterol [*see, e.g.*, DE 12 at 322, 331, 397]; and chronic obstructive pulmonary disease ("COPD") [*see, e.g.*, DE 12 at 76, 84, 309; *but see* DE 12 at 353-55]. Ultimately, based on his own argument, Mansfield's claim of disability to work comes down to physical impairment caused by the hernia and ongoing groin and flank pain. Mansfield's challenge focuses on the exertional limitations that are due to this injury [*see* DE 12 at 47, 48, 56], so I will likewise focus my discussion of the evidence.

In mid-2006 Mansfield went to a doctor complaining of right-side groin pain, at which point the doctor observed bulging and diagnosed a hernia. [DE 12 at 397-98.] A doctor operated in August 2006, inserting mesh through laparoscopic repair surgery. [DE 12 at 50, 398-99.] In August 2011 Mansfield sought emergency medical care because he felt weak and shaky, and when he was examined his abdomen appeared normal and he had no flank discomfort. [DE 12 at 307.] On October 22, 2012, Mansfield reported to a doctor that he had 6 out of 10 right groin pain at the end of the day when he lifted 30 or 40 pounds during the day (there is no indication of under what circumstances Mansfield did so, or when he had last done so). The medical record from that visit also notes that Mansfield's abdomen was firm and distended, and that his bowel sounds were hypoactive. [DE 12 at 25, 330.]

In November 2012, Mansfield applied for benefits, alleging disability beginning in June 2012. [DE 12 at 38, 241.] During a January 2013 visit to the doctor, Mansfield's abdomen was soft and nontender to palpitation. [DE 12 at 348.] In February 2013, state agency medical consultant Dr. Brill reviewed Mansfield's file in connection with Mansfield's application for benefits. Dr. Brill assessed that Mansfield was limited to handling 20 pounds occasionally and 10 pounds frequently, and to assuming various postures (including climbing ramps and stairs, balancing, and stooping) only occasionally—these weight restrictions are categorized as allowing "light work," from the perspective of exertion level. [DE 12 at 75.] *See* 20 C.F.R. § 404.1567(b). In March 2013, Dr. Corcoran, another government medical consultant, likewise reviewed Mansfield's file and concurred with Dr. Brill's assessment. [DE 12 at 102.]

At this point, it is worth pausing and considering what the import is of these state agency medical experts. According to Social Security Ruling 96-6p, "[s]tate agency medical . . . consultants are highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability claims under the Act." Their opinions are an integral part of the ALJ's consideration. "Because State agency medical . . . consultants and other program physicians . . . are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians . . . . Administrative law judges and the Appeals Council are

3

not bound by findings made by State agency or other program physicians . . ., but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, effective July 2, 1996, *available at* https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-06-di-01.html.

During the March 2014 hearing Mansfield testified that he previously worked preparing cases of beverages for delivery to grocery stores. For two to three hours each day, he had to lift cases of cans, which he said weighed fifteen to twenty pounds each. He explained that he left the job because he couldn't handle the lifting, and the company didn't have any other work for him. [DE 12 at 41-43, 53.] Before that, Mansfield worked at a car dealership cleaning the cars. [DE 12 at 44.] Mansfield explained that he began having muscle spasms after the hernia operation, and felt sore and stiff. [DE 12 at 51-52.] Mansfield testified that he doesn't lift much now. [DE 12 at 53.] Mansfield was unsure of whether he could do a heavier-duty car detailing job due to the possible requirement of lifting a shop vacuum, because he did not know how heavy a shop vacuum is. [DE 12 at 56.] Mansfield testified that he has started three different jobs since claiming disability, but that he was unable to keep any of these jobs—two because he couldn't do the lifting, and one from which he was let go after a week without any stated cause. [DE 12 at 40, 229-32.] He further testified that he lives in a homeless shelter, having moved there in November 2013. [DE 12 at 39.]

A vocational expert testified at the hearing. The VE categorized Mansfield's past work as automobile detailer (unskilled, medium-exertion work) and materials handler

(semi-skilled, heavy-exertion work). [DE 12 at 62.] The ALJ asked the VE various working condition and limitation hypotheticals. Under the one the ALJ ended up using—capable of carrying, lifting, pushing, and pulling ("handling") 50 pounds occasionally and 25 pounds frequently, with frequent climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling, and occasional climbing of ladders, ropes, and scaffolds—the VE testified that a person could work as an automobile detailer. [DE 12 at 64-65.] But a person limited to handling 20 pounds occasionally and 10 pounds frequently, with occasional climbing, balancing, stooping, crouching, kneeling, and crawling, would not be able to do Mansfield's past work.[DE 12 at 65-66.]

In addressing Mansfield's application, the ALJ navigated through the familiar five-step process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step two, the ALJ found that Mansfield had established five "severe impairments": high cholesterol, COPD, history of hernia surgery, adjustment disorder with anxiety and depression, and alcohol dependence in early remission. [DE 12 at 17.] At the third step, the ALJ determined Mansfield's impairments do not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then set Mansfield's residual functional capacity ("RFC") and found that Mansfield was capable of doing medium-exertion work. *See* 20 C.F.R. § 404.1567©. Specifically, the ALJ found Mansfield capable of handling 50 pounds occasionally and 25 pounds frequently; frequently climbing ramps and stairs, balancing, stooping, crouching, kneeling, and

crawling; and occasionally climbing ladders, ropes, or scaffolds. [*Id.* at 21.] Based on Mansfield's RFC, the ALJ found that he was capable performing the requirements of his past relevant work, specifically work as an automobile detailer. [DE 12 at 27.] With this finding, the ALJ did not need to move to step five, and therefore she concluded that Mansfield is not disabled. [DE 12 at 28.]

The ALJ made two critical findings in arriving at her conclusion that Mansfield is not disabled. First, the ALJ found Mansfield "not fully credible." [DE 12 at 22.] Second, the ALJ chose to give little weight to the evaluations by the government medical consultants because "[e]vidence available for the medical consultants' review and additional evidence received into the record at the hearing level convinces the undersigned that the claimant was less limited than originally thought." [DE 12 at 25.] Later, the ALJ explained that her assessment was that Mansfield may not be limited at all: "Although the evidence establishes underlying medical conditions capable of producing some pain or other limitations, the substantial evidence of record does not confirm disabling pain or other limitations arising from those impairments . . . . The undersigned finds that the preponderance of credible evidence establishes that the claimant experienced no greater than, at most, mild to moderate functional limitations upon his ability to perform basic work activities . . . ." [DE 12 at 27.]

In this appeal, Mansfield first challenges the ALJ's credibility finding, essentially arguing that the ALJ misinterpreted evidence relating to Mansfield's pursuit of remedies for his ailments, his activities of daily living, his allegedly inconsistent

6

statements, and the fact that Mansfield worked after the onset date he stated in his claim. [DE 17 at 5.] Second, Mansfield argues that the ALJ's RFC determination is not supported by substantial evidence because the physical limitations the ALJ assessed run counter to those found by the government medical consultants, and have no factual basis in the record. [DE 17 at 11-12.] Mansfield argues that steps four and five, analyzed under a limitation of light exertion, would find him unable to do past relevant work, and his educational history, lack of transferable skills, and age would then result in a finding that he is disabled. [DE 17 at 13 (*citing* 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, § 202.06).]

## Discussion

The ALJ's determination must be supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner*, 478 F.3d at 841 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This has also been described as sufficient evidence to form a "logical bridge" to the ALJ's conclusions. *See, e.g.*, *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Additionally, the ALJ's reasoning must be sufficiently articulated to permit meaningful review. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). "[W]hat matters are the reasons articulated *by the ALJ*." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). In making a substantial evidence determination, I will review the record as a

7

whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Terry*, 580 F.3d at 475.

The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment," apparently meaning the capacity to perform medium-exertion work. [DE 12 at 22.] The problem with this finding is that the ALJ did not explain why she assessed medium exertion or the particular weight-handling or movement capacities she did. Instead, she simply found that Mansfield is not as limited as he claims, and found him not credible to the extent his claims differ from her assessment. [DE 12 at 22-25.] That's not really a credibility assessment at all—the ALJ essentially found Mansfield credible to the extent what he said supported the ALJ's unsupported and pre-decided RFC. The above-quoted text from the ALJ's opinion is, in fact, a verbatim recitation of popular Social Security boilerplate. The Seventh Circuit has roundly criticized this standard language:

> This "template" is a variant of one that this court (and not only this court) had criticized previously . . . . In *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), we called this "meaningless boilerplate. The statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony (emphasis in original); []. "Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible. More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the

8

> record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case." []
>
> The present "template," which adds at the end of the previous one ". . . to the extent they are inconsistent with the above RFC assessment," is even worse . . . .
>
> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" — above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards.

*Bjornson v. Astrue*, 671 F.3d 640, 644-46 (7th Cir. 2012) (citations omitted).

Mansfield testified that he left his last substantial job because he couldn't do the lifting, he has taken jobs since then but hasn't been able to hold them, he feels pain in his right side when he does heavy lifting, and that he was homeless. There is absolutely no evidence that Mansfield can lift 50 pounds occasionally and 25 pounds frequently. It is, of course, the ALJ's prerogative to find Mansfield not credible after seeing him testify. *See, e.g., Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). But it must be a real credibility assessment that is thoroughly articulated in the ALJ's decision. The ALJ bases her finding that Mansfield is not entirely credible on alleged inconsistencies in the record, but the ensuing recitation of pieces of Mansfield's medical history does not

clearly indicate what was inconsistent, or what weight the ALJ placed on the various pieces of the record.

With respect to the history of hernia, the ALJ found that Mansfield's allegations regarding the frequency, duration and severity of his symptoms were unsupported "by the weight of the medical evidence." [DE 12 at 22.] But as a general matter, "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Israel v. Colvin*, 840 F.3d 432, 440 (7th Cir. 2016) (quoting *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016)).

I will briefly address some of the purported inconsistencies in the record, not to quibble or substitute my judgment for the Commissioner's, but to demonstrate that these parts of the record are neither an adequate articulation of Mansfield's lack of credibility, nor substantive evidence supporting the medium-exertion RFC. The ALJ noted that medical records indicate that Mansfield's abdomen was soft with normal bowel sounds during an appointment in 2011, and it appeared normal and was not painful to palpitation in 2013. [DE 12 at 22.] But this information was available to the State medical consultants, and did not prevent their opinion that Mansfield should be limited to light exertion. Furthermore, the ALJ pointed to nothing in the record that indicates a person cannot feel significant pain despite having a soft abdomen and normal bowel sounds. As for the lack of pain in 2013, that is not inconsistent at

all—Mansfield alleged that he feels pain as a result of doing heavy lifting, and by 2013 he had left his job and was not doing heavy lifting. The ALJ also noted that Mansfield's hernia surgery was in 2006, and he did not allege disability until 2012. [DE 12 at 25.] But there is no evidence in the record explaining that groin pain related to a past hernia can't get worse as time passes. The ALJ also wrote that Mansfield "reported lifting 30 to 40 pounds" in October 2012—but omitted the context for that statement, which was that Mansfield felt 6-out-of-10 pain after lifting 30 to 40 pounds, and that Mansfield did not say under what circumstances he lifted such weight, or when he had last done so. The medical record from that visit also notes that Mansfield's abdomen was firm and distended, and that his bowel sounds were hypoactive. [DE 12 at 25, 330.]

The ALJ also stated that Mansfield's daily activities aren't as limited as one would expect. However, nothing in the ensuing description involves substantial heavy lifting; home vacuuming comes closest, while lifting a gallon of milk is apropos of nothing. [DE 12 at 24, 347.] *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")

What's more, the fact that Mansfield very briefly held three new jobs after filing his claim [DE 12 at 40] is not an inconsistency. If anything, it demonstrates that Mansfield has tried to work, but lifting requirements have prevented him. [DE 12 at 40 ("I couldn't do the lifting").]

The ALJ accorded little weight to the opinions of medical consultants Dr. Brill and Dr. Corcoran that Mansfield is limited to light-exertion work because "[e]vidence available for the medical consultants' review and additional evidence received into the record at the hearing level convinces the undersigned that the claimant was less limited than originally thought." [DE 12 at 25.] This seems like an obtuse way of saying the ALJ disagreed with the medical experts' assessment, and so gave their opinions little weight. But this "explanation" is nothing more than a conclusion, and it does not satisfy the Commissioner's obligation to "explain the weight given to the opinions." SSR 96-6p, effective July 2, 1996, *available at* https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-06-di-01.html ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions."); *see also McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). The ALJ does not explain what evidence the doctors misinterpreted. Instead, the ALJ has simply substituted her opinion for that of the consulting doctors and without any basis for her opinion beyond perhaps relying on her assessment of Mansfield's credibility, which I

think is flawed as discussed above. In other words, the ALJ has chosen to disagree with the consulting doctors' assessments, but has no basis for her contrary opinion other than her own say so.

After finding Mansfield not fully credible and giving little weight to the medical consultants' opinions, the ALJ wasn't left with much evidence to work with to build the logical bridge. This is a problem, given that the ALJ must base her determination on substantial evidence, which necessarily means there must be *some* evidence supporting the conclusion. *See, e.g.*, *Terry v. Astrue*, 580 F.3d 471, 476 (2009) (the only medical opinion finding claimant could do sedentary work was unsigned, so it had to be set aside, and without evidence that claimant could do sedentary work, case required remand). The finding that Mansfield's testimony is not completely credible is not evidence that he can lift 50 pounds occasionally or 25 pounds frequently, particularly when no evidence in the record indicates that he can.

The Commissioner of Social Security has an affirmative obligation to develop the record on a claim for disability benefits, although failure to do so will only warrant remand where the omission was significant and prejudicial. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Israel v. Colvin*, 840 F.3d 432, 440 (7th Cir. 2016) (if medical record does not affirm claimant's pain allegations, ALJ must develop record by seeking information about severity of pain and its effect on ability to work). The affirmative evidence in the record, both medical and lay, indicates that Mansfield's groin injury limited his exertional ability to some extent. The ALJ's RFC determination

13

then comes out of left field—nothing in the record suggests that handling 50 pounds occasionally and 25 pounds frequently is an appropriate RFC.

At bottom, the ALJ found that Mansfield can lift 50 pounds occasionally and 25 pounds frequently and, by virtue of this finding, determined that Mansfield can perform his past work as a car detailer. But as discussed above, the premise — that he can lift 50 pounds occasionally and 25 pounds frequently — is unsupported, and therefore so too is the ALJ's finding that he can do past relevant work. And because the ALJ did not consider at step five whether Mansfield could do other relevant work in the national economy, it is necessary that this case be remanded. Perhaps if Mansfield were assigned a lower exertional level in his RFC, jobs might still be available to him in the national economy. That, of course, will be for the ALJ to decide on remand.

## CONCLUSION

I cannot find that the ALJ's determination with respect to Mansfield's RFC is based on substantial evidence. Without a valid RFC, the ALJ's analysis in the subsequent steps cannot stand. *See, e.g.*, *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record.").

///

**ACCORDINGLY:**

For the foregoing reasons, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED**.

ENTERED: December 1, 2016

/s/ Philip P. Simon
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**